**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **SCOTT SCHULTZ,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CASE NO. _____** |
| | § | |
| **ROCKWATER ENERGY** | § | |
| **SOLUTIONS, INC.** | § | |
| **Defendant.** | § | |
| | § | **JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**SCOTT SCHULTZ ("Schultz")**, Plaintiff in the above numbered and styled cause, files his Original Complaint complaining of **ROCKWATER ENERGY SOLUTIONS, INC.,** Defendant herein, and in support thereof shows this Court as follows:

1.    This is a suit in law and in equity, authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), and Section 1981 of the Civil Rights Acts of 1866, 42 U.S.C. §1981 ("Section 1981"). The jurisdiction of this Court is invoked to secure the protection of and redress the deprivation of rights secured by these laws protecting people such as the Plaintiff from employment discrimination, a hostile work environment and termination based on race and religion because Plaintiff is Jewish. This Court's supplemental jurisdiction is invoked as to the state law claims herein.

**Venue**

2.      Venue is proper in the U.S. District Court for the Southern District of Texas Houston Division.  A substantial part, if not all, of the cause of action accrued or arose in the Southern District of Texas.  Defendant maintains sufficient business contacts within the counties comprising the Houston Division.  Furthermore, the Plaintiff resided within the Houston Division during the pertinent time in question.

**Parties**

3.      Scott Schultz is a United States citizen and is currently a resident of Illinois, but was a Texas resident during the time in question.  At all times material hereto, Schultz was an employee of Defendant, as understood and defined by Title VII.

4.      Rockwater Energy Solutions, Inc. is a Texas corporation with its headquarters in Houston, Texas.  It may be served with this lawsuit by serving its registered agent for service of process, Corporation Service Company d/b/a CSC-Lawyers Inc., 1999 Bryan St., Suite 900, Dallas, TX 75201.

**Facts[1]**

5.      On or about March 25, 2013, Schultz received an offer from Defendant with a start date of April 1, 2013.

6.      The offer provided for up to $10,000 in relocation assistance with the expectation that the Schultz family relocate within 60 days after the start of his employment.  Schultz advised Defendant that due to a Chicago Public Schools teacher strike, his children would

---

1  These facts are by no means exhaustive.

not finish school until June 26, 2013.

7.      Defendant agreed that once Schultz's family relocated to Houston, he would qualify for the relocation assistance.

8.      Schultz commenced his employment with Defendant in April 2013 as its Senior CRM (Customer Relationship Management software) Analyst and Project Manager.

9.      During his employment, Schultz was the sole employee responsible for the CRM system, which had not existed prior to his employment.

10.     At the time of Schultz's hire, he was living with his family in Illinois.

11.     As an inducement to work for Defendant, Schultz was promised a particular relocation payment.

12.      On or about July 12, 2013, one day prior to relocating his family, Schultz met with his Supervisor and a manager with Defendant, Danny Grant, for Mr. Grant's approval and validation that Schultz was approved to relocate with such relocation reimbursement.

13.     With Mr. Grant's consent and approval for payment of such relocation expense, Schultz relocated his family the following day from Chicago, Illinois to Houston, Texas.

14.     Schultz's family relocated, at its own cost, pursuant to Defendant's agreement to pay such relocation amount.

15.     However, this amount was never paid to Schultz despite his repeated requests for such payment.

16.     Early in Schultz's employment with Defendant, while discussing neighborhoods in which he was considering to move his family, such as Bellaire and Meyerland, Schultz's Supervisor told him in front of two co-workers, "you don't want to live there,

that's Jewville."

17.     One of the co-workers pointed out that the Supervisor could not make that comment to which the Supervisor dismissively stated that he was repeating what he had heard.

18.     Then, several weeks later at lunch with the same two co-workers, Schultz was asked if he is Jewish to which he replied in the affirmative.

19.     The co-worker accused Schultz, "you killed Jesus" along with making other offensive remarks.

20.     Upon their return to the office, the two co-workers met behind closed doors with Schultz's Supervisor.

21.     After that incident, Schultz began to be ignored by his Supervisor and excluded from meetings where CRM was discussed.

22.     Eventually, after being treated like a pariah, Schultz was told that he was being terminated effective August 30, 2013 due to the purported reason of downsizing.

23.     Yet, Defendant did not have any qualified employees to handle Schultz's CRM duties (which were necessary), and it continued to hire more employees during this time.

24.     On Schultz's last day of work, August 13th, while he was leaving the Rockwater premises, Schultz's Supervisor called him on his mobile telephone.  Schultz's Supervisor made numerous statements that included calling Schultz a "fucking Jew" and that Schultz "burned (his) bridges."

**Additional Facts Related to Schultz being an Employee of Defendant.**

25.     Schultz was treated as an employee by Defendant.

26.     Schultz reported to only Defendant's employees.

27.     Schultz's immediate supervisor was Danny Grant (IT Director of Infrastructure).

28.     Schultz also reported to Biren Kumar (Chief Information Officer) and Mohan Chilari (IT Director of Applications), as well as having reported to Paul Pistono (Senior Vice-President of Sales and Marketing), all full-time Rockwater managers.

29.     Mr. Grant, Mr. Kumar, Mr. Chilari and/or Mr. Pistono, individually and collectively, directed Schultz's work and gave him written and verbal instructions as to his duties and responsibilities.

30.     Mr. Grant, Mr. Kumar, Mr. Chilari and/or Mr. Pistono also assigned to Schultz deadlines by which he was required to meet for certain tasks that were assigned to him.

31.     Schultz's duties included, but are not limited to:

a.      Analyze, design and implement Microsoft Dynamics CRM (Customer Relationship Management) for Defendant, referred to as "MS CRM";

b.      Configure MS CRM;

c.      Customize MS CRM;

d.      Maintain MS CRM;

e.      Troubleshoot MS CRM;

f.      Maintain Defendant's relationship with a third party vendor, SalesMetrix;

g.      Analyze business issues by interviewing key leaders and employees of Defendant;

h.      Create documentation for MS CRM and shared systems; such as training, meetings, etc…;

i.      Travel to other destinations relative to work on MS CRM for Defendant;

j.      Conduct training sessions;

k.      Interact with and support Defendant's sales team;

l.      Make recommendations about the process to implement;

        m.      Ongoing management of the MS CRM;

        n.      Ongoing improvements and upgrades of the MS CRM;

        o.      Ongoing Maintenance of the MS CRM; and

        p.      Participate in planning meetings with Defendant's IT group.

32.      Schultz was also asked to participate in fundraisers within Defendant for charitable giving.

33.      Schultz engaged in frequent daily interaction with his supervisors and co-workers at Defendant.

34.      Schultz was given a schedule and instructed to work in Defendant's office during its operating hours on Monday through Friday from its open to close, which operating hours were approximately 8:30 a.m. to 5:30 p.m.

35.      Schultz was also asked to work at nights and weekends.

36.      Schultz was the sole point of contact on Defendant's helpdesk for Defendant's employees, relative to MS CRM issues.

37.      Schultz was given a cubicle and Defendant's equipment to perform his job.

38.      Schultz needed to give his suggestions to Danny Grant for permission as to various decisions; such as meetings, training, design, development, etc…

39.      Schultz was required to seek permission from Danny Grant to take days off.

40.      Schultz was required to seek permission from Danny Grant regarding his travel plans, such as travel to Rockwater facilities and to/from Chicago prior to Schultz's relocation to Houston.

41.      Defendant controlled Schultz's work and duties he performed.

42.      Defendant gave Schultz the title of Senior CRM Analyst.

## CAUSES OF ACTION

43.    Plaintiff hereby incorporate all facts stated in the preceding paragraphs as if set

forth fully herein.

**Race Discrimination under Section 1981 and Religion Discrimination under Title
VII.**

44.    Being Jewish is a distinct race for civil rights purposes as a protected class under

Section 1981.  *Singer v. Denver Sch. Dist. No. 1*, 959 F. Supp. 1325 (D. Colo.

1997); *See Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 618, 95 L. Ed. 2d

594, 107 S. Ct. 2019 (1987); *See also St. Francis College v. Al-Khazraji*, 481 U.S.

604, 612, 95 L. Ed. 2d 582, 107 S. Ct. 2022 (1987).

45.    Defendant has intentionally discriminated against Plaintiff, engaged in disparate

treatment of Plaintiff, engaged in a hostile work environment toward Plaintiff, and

terminated Plaintiff based on his race (Jewish) and religion (Jewish) in violation

of Section 1981 and Title VII.

46.    As a result of Defendant's intentional, discriminatory and unlawful acts described

above, Plaintiff has suffered and continue to suffer actual damages and

compensatory damages including but not limited to mental anguish, humiliation,

emotional distress and damage to his professional reputation, all to his detriment

and compensable at law.  Plaintiff also sues for the recovery of punitive damages

as authorized by statute.

47.    Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs

alleged herein, and this action for preliminary and permanent injunction is the

only available means of securing adequate relief.  Plaintiff presently suffers and

will continue to suffer irreparable injuries from Defendant's policies, practices, customs, and usages set forth herein.

48.   The effect, purpose and intent of the policies and practices pursued by Defendant has been and continues to be to limit, classify, and willfully discriminate against employees on the basis of their race and religion and otherwise adversely effect their status as employees because of same.

49.   Plaintiff has timely filed a charge of discrimination with the United States Equal Employment Opportunity Commission and has received notice from said agency of his right to institute a civil action. Accordingly, all jurisdictional requisites to bring this suit under Title VII have been satisfied.

**Breach of Oral Contract and Debt Action**

50.   The Plaintiff had a valid and enforceable oral agreement with Defendant to pay his relocation expenses, which Defendant has failed to pay and refuses to pay.

51.   The oral contract was performable within one year.

52.   Plaintiff incurred relocation expenses for which he is owed money from Defendant as reimbursement for such relocation expenses.

53.   Defendant breached such oral contract by failing to pay such amount.

54.   Defendant owes a debt to Plaintiff, which was negotiated and promised by Defendant.

55.   Defendant failed to pay such debt.

56.   As a result of Defendant's unlawful actions, Plaintiff has been damaged.

57.   Plaintiff has retained the undersigned Counsel in connection with his claims herein and for which he seeks all reasonable and necessary attorneys' fees and

costs.

**WHEREFORE**, Plaintiff prays that this Court advance this cause on the docket, order a speedy trial at the earliest practicable date and cause this case in every way to be expedited and upon such hearing to:

i.    Grant Plaintiff a preliminary and permanent injunction enjoining Defendant, its agents and employees and those acts from continuing to maintain the policies, practices, customs or usages which discriminate against Plaintiff because of race and religion or otherwise deprive Plaintiff of his rights and privileges secured by Federal Law.

ii.    Grant Plaintiff a declaratory judgment, that the practices, policies, customs and usages complained of herein are violative of his rights protected by Title VII and Section 1981.

iii.    Order the Defendant to grant Plaintiff additional equitable, actual and compensatory relief, requiring said Defendant to make Plaintiff whole, including but not limited to promotions, back pay and front pay including all accrued interest, insurance benefits, pension benefits, bonuses, vacation benefits, sick leave, and other incidental benefits that attach to and were incidental to Plaintiff's employment with Defendant and incidental to each such position sought by Plaintiff, as authorized by statute.

iv.    Enter a monetary judgment on Plaintiff's behalf against Defendant pursuant to Texas common claims of Breach of Oral Contract and Debt.

v.    Order the Defendant to grant Plaintiff compensatory damages.

vi.    Order the Defendant to pay punitive damages in an amount at least three times the

actual and compensatory damages awarded.

vii.     Order front pay for Plaintiff, who has been discharged, in lieu of reinstatement, if reinstatement is not feasible.

viii.    Grant an Order restraining Defendant from any retaliation against Plaintiff for participation in any form in this action.

ix.      Grant Plaintiff his costs incurred herein, and as part of such costs, reasonable Attorneys' fees and Expert witness fees and such further, additional or alternative relief and affirmative action orders as may appear equitable and just.

Respectfully submitted,

By:     /x/Ashok Bail_____
        ASHOK BAIL
        STATE BAR #24043541
        3120 Southwest Freeway, Suite 450
        Houston, Texas 77098
        (832) 216-6693 (Tel)
        (832) 263-0616 (Fax)
        ashok_bail@yahoo.com

Of Counsel:
THE BAIL LAW FIRM


OF COUNSEL:

IAN SCHARFMAN
STATE BAR #00788360
3120 Southwest Freeway, Suite 450
Houston, Texas 77098
(713) 255-2267 (Tel)
(713) 255-2270 (Fax)
ian@scharfmanlawfirm.com

Of Counsel:
THE SCHARFMAN LAW FIRM, PLLC

ATTORNEYS FOR PLAINTIFF